UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| PATRICIA GALLANT, | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 1:16-cv-00380-GZS |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) | |
| Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that (i) the ALJ erred in his assessment of the medical evidence before him, (ii) substantial evidence does not support his residual functional capacity ("RFC") assessment, and (iii) substantial evidence does not support his Step 5 finding. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 2-9.[3] I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 17, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[3] The plaintiff also filed a Motion for Leave To File Reply (ECF No. 20), to which she appended a proposed Plaintiff's Reply Memorandum to Defendant's Opposition to Plaintiff's Itemized Statement of Errors (ECF No. 20-1). I denied the motion, noting that the plaintiff's counsel could address the issues raised in the proposed reply brief at oral argument. *See* ECF No. 22 (citing Loc. R. 16.3(a)(2)(B)).

The decision at issue is the second pertaining to the plaintiff's SSD application filed on January 25, 2011. *See* Record at 113. Following an unfavorable decision by the ALJ on March 22, 2013, *see id.* at 128-29, the plaintiff sought review by the Appeals Council, which vacated that decision and remanded the case to the ALJ for further evaluation of the nontreating source opinion of Jonathan M. Freedman, Ph.D. *See id.* at 135. The ALJ held a second hearing on February 26, 2015, during which he took testimony from the plaintiff, a vocational expert, and a psychological medical expert, James M. Claiborn, Ph.D. *See id.* at 12, 26-27. On April 18, 2015, he issued the decision here at issue. *See id.* at 12-20.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff last met the insured status requirements of the Social Security Act on December 31, 2014, Finding 1, Record at 14; that she had severe impairments of depression, not otherwise specified ("NOS"), and agoraphobia with panic, Finding 3, *id*; that she had the RFC to perform a full range of work at all exertional levels, but with the nonexertional limitations that she could understand and remember simple instructions, accomplish simple tasks on a consistent schedule to complete a normal workday and workweek, interact appropriately with small groups of coworkers, and tolerate occasional interaction with supervisors, but needed to avoid interaction with the general public, could only occasionally perform collaborative tasks, as she was better suited for independent work, and could adapt to occasional routine changes in the workplace, Finding 5, *id.* at 16; that, considering her age (52 years old, defined as an individual closely approaching advanced age, on her date last insured, December 31, 2014), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 19;

and that she, therefore, had not been disabled from December 8, 2010, her alleged onset date of disability, through December 31, 2014, her date last insured, Finding 11, *id.* at 20. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. The ALJ's Assessment of Expert Opinions

The plaintiff first argues that the ALJ failed to properly evaluate the opinions of three sources: treating Nurse Practitioner ("NP") Annette M. Hatch-Clein, Dr. Claiborn, and Jonathan Siegel, Ph.D., the plaintiff's consultative examiner. *See* Statement of Errors at 2-5. For the reasons detailed below, these arguments do not succeed.

### 1. NP Hatch-Clein

The record before the ALJ contained the treatment notes of NP Hatch-Clein as well as a Medical Source Statement of Ability To Do Work-Related Activities (Mental) form that she completed on August 6, 2012 ("Hatch-Clein Opinion"). *See* Record at 500-01. The plaintiff complains that the ALJ "completely ignored" the Hatch-Clein Opinion. *See* Statement of Errors at 3. The commissioner admits that the ALJ did not discuss the opinion but asserts that his handling of it comported with the requirements of Social Security Ruling 06-03p ("SSR 06-03p"). *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 17) at 2-5. I agree.

The form that NP Hatch-Clein filled out listed 20 mental abilities bearing on an individual's ability to do work-related activities on a sustained basis. *See* Record at 500-01. She checked boxes indicating that the plaintiff was markedly limited in, or effectively precluded from performing, 17 of them. *See id*. She left blank the section of the form that requested "a diagnosis and a brief indication of what medical or clinical findings support this assessment[.]" *Id.* at 501.

Hatch-Clein, a nurse practitioner, does not qualify as an "acceptable medical source" for Social Security purposes, *see* 20 C.F.R. §§ 404.1513(a), 416.913(a) (versions in effect prior to Jan. 18, 2017). "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016), at 329. Yet, evidence from "other sources" such as Hatch-Clein may not be ignored:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable

4

medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

*Id*. at 330. "The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors[.]" *Id*. at 331. Finally:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id*. at 333.

This court has held that "a decision complies with the requirements of SSR 06-03p when it makes clear that, had the administrative law judge expressly discussed the opinion of an 'other source,' he or she would have rejected it." *Robshaw v. Colvin*, No. 1:14-cv-281-JHR, 2015 WL 3951959 at *5 (D. Me. June 28, 2015) (citation omitted).

Here, the ALJ fulfilled his obligation under SSR 06-03p. He discussed NP Hatch-Clein's treatment notes, observing that many were at odds with the plaintiff's testimony. *See* Record 16-18. The notes reflected that, at various points, the plaintiff denied suffering from anhedonia and/or depression, *see id*. at 17-18, 449-50, that she was not in acute distress and was alert, oriented, and responding well to her medication, *see id*. at 17-18, 450-51, and that her depression was stable, *see id*. at 17, 473. Further, the plaintiff stopped receiving treatment from NP Hatch-Clein for a year, from September 2011 to September 2012. *See id.* at 17. Upon the plaintiff's return to NP Hatch-Clein's care, it was noted that she was responding well to her medication, and the same assessment was made in May 2014. *See id.* at 17-18, 493, 607. Finally, the ALJ noted that in 2013-14, the

5

plaintiff was caring for her two-year-old grandchild and that she had adequate attention, concentration, and memory. *See id.* at 18, 525, 595.

As the commissioner persuasively argues in her brief, *see* Opposition at 2-5, because the ALJ explained in some detail how, in his view, the Hatch-Clein treatment notes conflicted with the plaintiff's allegations of disabling limitations, it is clear that, had he expressly discussed the Hatch-Clein Opinion, he would have rejected it. The *Robshaw* standard, thus, is met.

### 2. Dr. Siegel

The ALJ's consideration of the opinion of Dr. Siegel reinforces the argument that, had he expressly addressed NP Hatch-Clein's opinion, he would have rejected it. Dr. Siegel was hired by the plaintiff as a consultative examiner. *See id.* at 506. After examining the plaintiff, he too filled out a Medical Source Statement of Ability To Do Work-Related Activities (Mental) form ("Siegel Opinion"). *See id.* at 514-15. He deemed the plaintiff less restricted than had NP Hatch-Clein, checking boxes indicating that she was markedly limited in, or effectively precluded from performing, eight of the 20 listed activities. *Compare id.* at 500-01 *with id.* at 514-15. Even with this less restrictive finding, the ALJ afforded the Siegel Opinion little weight for the reasons he had discussed in summarizing the medical evidence of record and because it was "persuasively refuted by Dr. Claiborn's testimony." *Id*. at 18. Accordingly, it is reasonably clear that, had the ALJ discussed the Hatch-Clein Opinion, which was even more restrictive than that of Dr. Siegel, he would have rejected it.

To the extent that the plaintiff challenges the ALJ's treatment of the Siegel Opinion on its face, I find no error. First, for the reasons discussed above, the ALJ reasonably deemed the longitudinal evidence of record, including the Hatch-Clein treatment notes and the plaintiff's activities of daily living, inconsistent with the Siegel Opinion.

Second, the ALJ supportably concluded that the Claiborn testimony refuted the Siegel Opinion. At oral argument, the plaintiff's counsel contested that finding, contending that the Siegel Opinion and the Claiborn testimony were consistent in that Dr. Claiborn testified that, while the record suggested that the plaintiff had moderate impairments in social functioning and concentration, persistence, or pace, her testimony suggested that she had marked impairments in those domains. *See id*. at 56-57.

As counsel for the commissioner rejoined, however, the ALJ resolved any tension or ambiguity in Dr. Claiborn's testimony, assessing only moderate limitations in social functioning and in concentration, persistence, or pace, and thereby adopting Dr. Claiborn's opinion as to the degree of functional impairment suggested by the medical record, rather than by the plaintiff's testimony. *See id*. at 15. The ALJ explained:

> Providers have not documented difficulties interacting with the [plaintiff], whom they usually describe as pleasant and cooperative. The [plaintiff] told Dr. Siegel that she had no particular problems with attention, concentration or memory, and clinicians have not observed difficulties in those areas. . . . Dr. Claiborn testified that he believed the evidence supports the above degree of functional impairment and the undersigned credits his assessment, finding it in accord with substantial evidence of record.

*Id*.

Moreover, as the commissioner notes, *see* Opposition at 7, Dr. Claiborn testified that there were inconsistencies between Dr. Siegel's findings in his narrative report and his opinion, *see* Record at 60. For example, in his narrative report, Dr. Siegel stated that the plaintiff's "ability to follow work rules is adequate but will be moderately impaired due to her interpersonal anxiety as will her ability to relate to supervisors, coworkers, and the public." *Id*. at 512. Yet, in the Siegel Opinion, he checked off a box indicating that the plaintiff was markedly limited in, or effectively

precluded from, accepting instructions and responding appropriately to criticism from supervisors. *See id.* at 515.

Third, and finally, although the ALJ was not required to provide "good reasons" for his treatment of the opinion of Dr. Siegel, a one-time examining consultant, as he would for a treating source, he did so here. *See Bowie v Colvin*, No. 2:12-cv-205-DBH, 2013 WL 1912913 at *7 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* May 7, 2013) ("A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons.") (citation and internal quotation marks omitted).

There was no error in the ALJ's handling of the Siegel Opinion.

### 3. Dr. Claiborn

With respect to the Claiborn testimony, the plaintiff complains that the ALJ erred in (i) failing to resolve Dr. Claiborn's "equivocal views" on whether her limitations in social functioning and in concentration, persistence, or pace were moderate or marked and (ii) "insist[ing] that [Dr. Claiborn] confine his testimony to the record[,]" preventing him from expressing an opinion taking into account her testimony at hearing. Statement of Errors at 3-5. At oral argument, the plaintiff's counsel further contended that it is unclear whether the ALJ intended that Dr. Claiborn's testimony regarding her RFC be restricted solely to the medical record or whether Dr. Claiborn understood that it should be. As a result, she asserted, it is impossible to determine the basis for the Claiborn RFC opinion. These arguments are without merit.

First, the ALJ did not direct Dr. Claiborn to confine his testimony to the medical records. Rather, he asked him to rate the plaintiff's degree of restriction in the various domains of functioning. *See* Record at 56. Dr. Claiborn himself raised the issue that there were "some

differences between testimony and what the record seems to suggest." *Id*. As discussed above, he then testified that the medical evidence suggested a moderate degree of limitation, while the plaintiff's testimony suggested that her degree of limitation was marked. *See id*. at 56-67.

Second, Dr. Claiborn's testimony was clear. There were no equivocal answers to be squared, as the plaintiff suggests. It was the job of the ALJ to assess the credibility of the plaintiff's testimony. *See, e.g., Rodriguez v. Celebrezze,* 349 F.2d 494, 496 (1st Cir. 1965) ("Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [commissioner]."). As noted above, he did so, explaining why he did not fully credit her testimony and, hence, assessed moderate, rather than marked, limitations.

The plaintiff argues, in passing, that the ALJ's credibility assessment was insufficiently meaningful to resolve any ambiguities in that he merely deemed her testimony not "entirely" credible and failed to discuss which specific portions he credited and which he did not. Statement of Errors at 4-5 (quoting Record at 16). She cites *Da Rosa v. Secretary of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986), for the proposition that an ALJ's determination "must be supported by substantial evidence and the ALJ must make *specific findings* as to the relevant evidence he considered in determining to disbelieve the appellant." *Id*. at 4 (emphasis added by plaintiff).

As the commissioner rejoins, *see* Opposition at 10-11, the ALJ met that standard, identifying specific evidence on which he based his credibility determination; for example, the Hatch-Clein treatment notes, the existence of a yearlong gap in treatment, and the plaintiff's activities of daily living, *see* Record at 16-18. He was not obligated to identify which portions of the plaintiff's testimony he found credible and which he did not. *See, e.g., Raymond v. Colvin*, No. 2:12-CV-374-GZS, 2014 WL 424156, at *3 (D. Me. Feb. 4, 2014) (noting that ALJ need not have analyzed the credibility of each statement when, "overall, he found the [claimant] to have

9

'little credibility,' and specifically, he discredited any claimed restrictions inconsistent with those set forth in his mental RFC determination").

Third, and finally, there is no fatal ambiguity in the basis for Dr. Claiborn's RFC opinion. The ALJ asked him to "review with me your opinion" on a series of RFC components. *Id*. at 57-59. The wording of those questions, as well as of Dr. Claiborn's answers, suggests that Dr. Claiborn provided *his* opinions – not his opinions as artificially confined by the ALJ to the medical record. *See, e.g., id*. at 57-58 ("I think [the plaintiff] would be able to understand relatively simple directions, but as the complexity or detail level increases she would begin to show significant impairment so that she would be unable to understand or remember detailed instructions."). Of note, Dr. Claiborn went on to testify to the ways in which the Siegel narrative (as opposed to the Siegel Opinion) corroborated his own opinions. *See id*. at 60 ("[Dr. Siegel] states that [the plaintiff] would be best functioning independently. I agree.").

### B. The ALJ's RFC Assessment

The plaintiff next argues that the ALJ's RFC formulation is flawed because he failed to address her limitations in multiple areas of functioning, as a result of which he lacked medical support for his conclusions. *See* Statement of Errors at 5-9. I find no error.

The plaintiff relies on the ALJ's asserted failure to seek Dr. Claiborn's opinion on her capacity to perform 14 mental abilities listed in the Social Security Program Operations Manual System ("POMS") as critical for performing unskilled work; for example, the abilities to "maintain attention for extended periods of 2-hour segments[,]" "maintain regular attendance and be punctual within customary tolerances]," "sustain an ordinary routine without special supervision[,]" "complete a normal workday and workweek . . .[,]" and "accept instructions and respond appropriately to criticism from supervisors." *Id*.; POMS § DI 25020.010(B)(3).

She contends that, because the ALJ rejected the opinions of NP Hatch-Clein and Dr. Siegel that she had marked limitations in many of the 14 critical abilities, he erred in relying on the Claiborn testimony without eliciting his opinion on the same. *See* Statement of Errors at 5-9. She notes, for example, that, although Dr. Claiborn testified that she had agoraphobia – the fear of going out – and NP Hatch-Clein and Dr. Siegel both deemed her markedly limited in the ability to complete a normal workday/workweek, the ALJ never asked Dr. Claiborn whether he found her restricted in that ability. *See id*. at 5. At oral argument, her counsel asserted that she was seriously limited, as well, in the ability to accept criticism from supervisors, and yet the ALJ never sought Dr. Claiborn's views on that point, either.

She concludes, "The problem is that there is a gap between those abilities which Dr. Claiborn suggested, albeit equivocally, that [the plaintiff] retained despite her impairments and those which the agency has determined she must possess in order to function in the work place." *Id.* at 8.

The plaintiff's reliance on the 14 mental abilities listed in the POMS is misplaced. As the commissioner points out, *see* Opposition at 14-16, the POMS itself indicates that each of the 14 abilities is part and parcel of the broader four basic mental demands needed to perform competitive, remunerative, unskilled work, namely, the abilities (on a sustained basis) to (i) "understand, carry out, and remember simple instructions[,]" (ii) "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions[,]" (iii) "respond appropriately to supervision, coworkers and work situations[,]" and (iv) "deal with changes in a routine work setting[,]" POMS § DI 25020.010(A)(3). The POMS explains that the specific mental abilities listed in sections (B)(2) through (B)(5) – including the 14 mental abilities set forth in section (B)(3)

11

– correlate to section I, Summary Conclusions, of the commissioner's RFC assessment form. *See id*. § DI 25020.010(B)(1). It notes:

> The purpose of section I ("Summary Conclusions") on the [RFC assessment form] is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis. It is the narrative written by the psychiatrist or psychologist in section III ("Functional Capacity Assessment") of [the RFC assessment form] that adjudicators are to use as the assessment of RFC.

*Id*. (emphasis omitted).

> This is consistent with Social Security Ruling SSR 85-15 ("SSR 85-15"), which provides:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991, at 347.

Relying on the same POMS section cited by the plaintiff, this court rejected a claimant's bid for remand on the basis of an ALJ's failure to address specific findings set forth in section I of a mental RFC form. *See Riley v. Astrue*, No. 06-95-B-W, 2007 WL 951424, at *6 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 16, 2007), (noting, "When one compares the [ALJ's mental RFC] assessment with those of [three agency nonexamining consultants] as articulated in section III of [the commissioner's mental RFC] form, it is apparent that he did indeed give their findings considerable weight and that his assessment is consistent with theirs."). *See also, e.g., Dubriel v. Astrue*, Civil No. 08-406-B-W, 2009 WL 1938986, at *4 (D. Me. July 6, 2009) (rec. dec., *aff'd* July 24, 2009) (same). The ALJ, accordingly, was not required to elicit Dr. Claiborn's opinion on the 14 mental abilities contained within section I of the commissioner's mental RFC form.

As the commissioner observes, *see* Opposition at 13-14, the ALJ elicited Dr. Claiborn's testimony on the broader four basic mental demands needed to perform unskilled work and relied on his responses in crafting his RFC determination, *compare* Finding 5, Record at 16 *with id*. at 57-60. The ALJ's RFC determination, accordingly, is supported by substantial evidence in the form of the Claiborn testimony, as well as his discussion of the longitudinal record evidence generally.

### C. The ALJ's Step 5 Conclusion

The plaintiff finally contends that the administrative law judge's Step 5 finding was unsupported by substantial evidence in that he relied on vocational testimony predicated on a flawed RFC finding. *See* Statement of Errors at 9. This argument hinges on the success of the plaintiff's RFC arguments, which I have rejected for the reasons discussed above. Accordingly, it forms no basis for remand. *See, e.g., Bowden v. Colvin*, No. 1:13-CV-201-GZS, 2014 WL 1664961, at *4 (D. Me. Apr. 25, 2014) ("I have rejected [the claimant's] arguments about the RFC, so this corollary argument regarding the hypothetical question [posed to a vocational expert] must fail as well.").

### II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 25th day of June, 2017.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge